# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Chad Vaith, | Case No. 18-cv-031 (JRT/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| General Motors, LLC and House Chevrolet Co., | |
| Defendants. | |

Brent S. Schafer, Shafer Law Firm, PA, 991 Sibley Memorial Highway, Suite 207, Lilydale, MN 55118, Robert Cowan and Laurence G. Tien, Bailey, Peavy, Bailey, Cowan, Heckaman, PLLC, 5555 San Felipe, Suite 900, Houston, TX 77056, for Plaintiff

Michael P. Cooney, Michael A. Stephani, David P. Graham, and Kirstina Kaluza, Dykema Gossett PLLC, 400 Renaissance Center, Detroit, MI 48243, for Defendant General Motors, LLC

Robert G. Benner, Dunlap & Seeger, PA, PO Box 549, Rochester, MN 55903, for Defendant House Chevrolet

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendant House Chevrolet's Motion to Dismiss [Doc. No. 10] and Plaintiff Chad Vaith's Motion to Remand [Doc. No. 22]. These motions were referred to the undersigned by the Honorable John R. Tunheim, Chief United States District Judge, in an Order of Referral dated April 3, 2018 [Doc. No. 43]. For the reasons set forth below, the Court recommends that the Motion to Dismiss be granted and the Motion to Remand be denied.

1

## I.    Background

On June 2, 2014, Vaith purchased a new 2014 Chevy Silverado 1500 LTZ from the House Chevrolet car dealership in Stewartville, MN.  (Compl. ¶ 10 [Doc. No. 1-1].) Roughly six months later, Vaith lost control of his Silverado pickup while driving southbound along County Road 5 and crashed it into a ditch near Byron, Minnesota.  (*Id.* ¶¶ 10-14.)  Vaith asserts that unspecified vehicle defects caused him to lose control of and crash the vehicle.  (*Id.* ¶ 17.)  Vaith additionally claims that his injuries were exacerbated by faulty safety equipment, and asserts in particular that defective safety belt pretensioners did not engage to brace him for the impact of the crash and that defective airbags failed to deploy to decelerate his forward momentum from the crash.  (*Id.* ¶ 15.) As a result of the accident and the alleged failure of the safety equipment in the vehicle to deploy, Vaith suffered serious injuries including head trauma, a punctured and collapsed lung, and multiple fractures in his sternum, ribs, and vertebrae.  (*Id.* ¶¶ 15, 81.)

On December 5, 2017, Vaith sued General Motors and House Chevrolet in Olmstead County, Minnesota.  (*Id.*)  Vaith asserts the following six causes of against General Motors: defective design, defective manufacture, negligence in the sale of defective products, strict liability, fraud by non-disclosure, and failure to warn.  (*Id.* ¶¶ 27-59.)  Vaith asserts the following three causes of action against both General Motors and House Chevrolet: misrepresentation, consumer fraud, and civil conspiracy.  (*Id.* ¶¶ 60-80.)  In support of his claims against the joint defendants, Vaith alleges that General Motors and House Chevrolet made misrepresentations to him regarding the safety of the Silverado pickup truck and also failed to warn him of numerous Silverado

2

defects and product recalls.  (*Id*. ¶¶ 16-25.)  Further, Vaith asserts that House Chevrolet

should have ensured that its vehicles were safe and contained properly functioning

throttle body units, airbags, power-steering, power brakes, and safety equipment.  (*Id*.

¶ 18.)  Vaith additionally asserts that House Chevrolet knew or should have known about

numerous vehicle defects and product recalls on 2014 model year Silverados issued by

the National Highway Traffic Safety Administration (NHTSA).  (Id. ¶¶ 16, 23.)

Therefore, Vaith claims that General Motors and House Chevrolet intentionally

concealed material facts regarding the safety of the Silverado pickup truck, and asserts

that Vaith relied on those misrepresentations when purchasing it.  (*Id.* ¶¶ 62-75, 81.)

The instant case involves facially non-diverse parties, because both Vaith and

House Chevrolet are residents of Minnesota.  Nevertheless, General Motors removed this

action to federal court asserting that the real parties to the litigation are diverse because

House Chevrolet had been fraudulently joined to the action.  (Notice of Removal ¶¶ 11-

15 [Doc. No. 1].)  Shortly thereafter, House Chevrolet moved to dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. No. 10].  On March 5,

2018, Vaith moved to remand the case to state court, asserting that removal is improper

because Vaith and House Chevrolet are both citizens of Minnesota. (Mot. Remand [Doc.

No. 22].)

## II.    Fraudulent Joinder and House Chevrolet's Rule 12(b)(1) Motion to Dismiss

With limited exceptions, Minnesota law requires that claims sounding in strict

liability against a product seller for injuries caused by a defective product must be

dismissed where the manufacturer of that product is available to be sued and could satisfy

a judgment.  Minn. Stat. § 544.41.  An injured plaintiff may, however, sustain claims

other than strict liability against the seller.  Furthermore, the claims against the seller will

not be dismissed if the plaintiff "can show" that the seller created the defect, exercised

significant control over the design, manufacture, or warnings for the product relative to

the alleged defect that caused the injury, or had actual knowledge of the product defect.

Minn. Stat. § 544.41 Subd. 3.  Plaintiff here does not assert strict liability claims against

House Chevrolet, but does allege that House Chevrolet knew of the defects in Vaith's

Silverado and misrepresented or fraudulently concealed them from him.

House Chevrolet argues Vaith's claims cannot be sustained, and that it should be

dismissed under Rule 12(b)(1) pursuant to the fraudulent joinder doctrine because Vaith

included House Chevrolet as a defendant for the sole purpose of defeating complete

diversity.[1]  House Chevrolet argues in particular that Vaith makes only vague and

conclusory accusations, according to House Chevrolet, that do not indicate the "who,

what, where, when, and how of the alleged fraud."  *Drobnek v. Anderson Corp.,* 561 F.3d

778, 783 (8th Cir. 2009).  Thus, House Chevrolet argues, Vaith has failed to plead his

---

[1]  House Chevrolet additionally asserts that Vaith's claims should be dismissed for failing
to state a claim pursuant to Rule 12(b)(6).  "[T]he doctrine of fraudulent joinder allow[s]
the district court only temporary jurisdiction to determine whether . . . a facially
nondiverse defendant . . . was fraudulently joined."  *Wivell v. Wells Fargo Bank, N.A.*,
773 F.3d 887, 896 (8th Cir. 2014)  (citing *Murphy v. Aurora Loan Servs., LLC,* 699 F.3d
1027, 1031 (8th Cir. 2012).  Under such circumstances, the district court's subject matter
jurisdiction under 28 U.S.C. § 1332 only arises after the non-diverse defendant is
dismissed as fraudulently joined.  *Wivell,* 773 F.3d at 896 (citing *Hogan v. Raymond
Corp.*, 536 Fed. App'x. 207, 211 (3d Cir. 2013)).  Therefore, a motion to dismiss
pursuant to the fraudulent joinder doctrine turns on the issue of subject matter jurisdiction
and, as such, the Court's analysis falls under Rule 12(b)(1) as opposed to Rule 12(b)(6).
*Wivell*, 773 F.3d at 896.

claims for misrepresentation, fraud, and conspiracy with the particularity required by Rule 9(b), and his complaint asserts no reasonable basis for liability on the part of House Chevrolet.

Vaith counters that his complaint alleges facts sufficient to meet the particularity requirement because it places House Chevrolet on notice of allegations against it and raises a reasonable expectation that discovery will reveal evidence supporting House Chevrolet's liability.  Vaith additionally argues that even if the Court determines it has not sufficiently pled its claims against House, it should not rule on the motion to dismiss because House Chevrolet failed to demonstrate it was fraudulently joined.  Therefore, the Court should remand the case to state court on the basis that there is no diversity jurisdiction and leave it to the state court to determine whether the claims against House were adequately pled.

### A.    Legal Standard

"The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012).

Fraudulent joinder occurs where a plaintiff files "a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003).  Thus, "[w]here applicable state precedent precludes the existence of a cause of action against a defendant, joinder is

fraudulent." *Filla*, 336 F.3d at 810.  "However, if there is a 'colorable' cause of action – that is, if the state law might impose liability on the resident defendant under the facts alleged – then there is no fraudulent joinder." *Id.*  Stated another way, "[j]oinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002); *Wells' Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 157 F. Supp. 2d 1018, 1038 (N.D. Iowa 2001) (fraudulent joinder found where pleadings contained a "legally insufficient factual basis for an element of the claim against the non-diverse defendant").

That said, Defendant bears the burden to establish fraudulent joinder, and the burden has been described as "a heavy one."  *Arens v. O'Reilly Auto., Inc.*, 874 F. Supp. 2d 805, 808 (D. Minn. 2012).  The central question in assessing a claim of fraudulent joinder is whether "there is *arguably* a reasonable basis for predicting that the state law might impose liability based upon the facts involved."  *Id.* at 809 (internal citations omitted) (emphasis in original). "[I]n situations where the sufficiency of the complaint against the non-diverse defendant is questionable, the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide."  *Filla*, 336 F.3d at 811.

### B.     Dispute Regarding the Appropriate Standard for Fraudulent Joinder

Vaith asserts that establishing fraudulent joinder requires more than showing that the claims should be dismissed for failing to state a claim pursuant to Rule 12(b)(6).

*Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011). "[I]f it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Id.* "However, joinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" *Id.* Thus, where facially non-diverse parties have been removed to federal court, Vaith argues a federal court should remand wherever there is even the slightest doubt as to whether a state court could potentially find liability against a defendant.

General Motors contends that its burden for establishing fraudulent joinder is not higher than the burden for a Rule 12(b)(6) motion to dismiss. As support, General Motors points to the following passage from *Junk v. Terminix Int'l*:

> The parties dispute whether we should review the district court's denial of [Plaintiff's] remand motion and subsequent dismissal of [Defendant] under the fraudulent joinder standard outlined in *Filla v. Norfolk Southern Railway Co.*, 336 F.3d 806, 809–11 (8th Cir.2003), or under the standard in Fed. R. Civ. P. 12(b)(6). This question is significant because the two standards differ, with Rule 12(b)(6) being more demanding. Under the *Filla* standard "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Filla*, 336 F.3d at 811. In contrast, [t]o survive a [Rule 12(b)(6) ] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.

628 F.3d 439, 445 (8th Cir. 2010) (internal quotations omitted).

The Court agrees with Vaith that *Filla* imposes a higher burden for defendants to establish fraudulent joinder than is required to demonstrate failure to state a claim under Rule 12(b)(6). Some confusion may stem from a misunderstanding of the vantage point

from which the Eighth Circuit was commenting in *Terminix*.  In that case, the Eighth

Circuit explained that a *plaintiff's* task to overcome a Rule 12(b)(6) motion to dismiss is

more demanding than to overcome a claim of fraudulent joinder under the *Filla* standard,

because *Filla* merely requires a plaintiff to show there is some plausible way a state court

could find liability against the defendant.  Logically, therefore, the *defendant's* burden to

sustain a claim of fraudulent joinder under the *Filla* standard is higher than its burden to

prevail on a Rule 12(b)(6) motion, because the defendant cannot rest its argument on

some defect in the artfulness of the plaintiff's complaint—it must show that there is no

reasonable basis to expect that liability would be imposed upon the defendant in state

court for the claims asserted in the complaint.  *Block v. Toyota Motor Corp.*, 665 F.3d

944, 948 (8th Cir. 2011) (when considering fraudulent joinder, "we do not focus on the

artfulness of the plaintiff's pleadings"); *see also*, *Wilkinson v. Shackelford*, 478 F.3d 957,

964 (8th Cir. 2007).

    With the appropriate standard in mind, the Court will now turn its attention to the

specific claims and pleadings placed at issue by the motion to dismiss.

### C.    Count VII – Misrepresentation

    House Chevrolet asserts that Vaith's pleadings for misrepresentation fall

considerably short of meeting the particularity requirements under Federal Rule of Civil

Procedure 9(b), and thus do not provide a reasonable basis for predicting that the state

law might impose liability.  "Misrepresentation, whether negligent or fraudulent,

constitutes fraud under Minnesota law" and must be pled with particularity.  *Juster Steel*

*v. Carlson Companies*, 366 N.W.2d 616, 618 (Minn. Ct. App. 1985). [2]  Thus, to meet the

heightened standards for pleading misrepresentation, a complaint must include "such

matters as the time, place and contents of false representations, as well as the identity of

the person making the misrepresentation and what was obtained or given up thereby."

*Schaller Tel. Co. v. Golden Sky Sys.,* 298 F.3d 736, 746 (8th Cir. 2002).

> Fraudulent misrepresentation occurs where:
>
> (1) there was a false representation by a party of a past or existing material
> fact susceptible of knowledge;
>
> (2) made with knowledge of the falsity of the representation or made as of
> the party's own knowledge without knowing whether it was true or false;
>
> (3) with the intention to induce another to act in reliance thereon;
>
> (4) the representation caused the other party to act in reliance thereon; and
>
> (5) the party suffer[ed] pecuniary damage as a result of the reliance.

*Hoyt Properties, Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007).

Negligent misrepresentation "occurs when a person, in the course of his or her

business, profession, [or] employment, during a transaction in which he or she has a

financial interest:

> 1. Supplies false information to another person to guide them in that person's own
> business transactions, and

---

[2]  Vaith's Complaint appears to plead fraudulent, *i.e.* intentional, misrepresentation
against House Chevrolet.  For instance, Vaith alleges both defendants "fraudulently and
affirmatively concealed the defective nature of the subject vehicle" and knowingly made
"partial disclosures about the safety and quality of the subject vehicle while not revealing
its true defective nature."  (Compl. ¶ 62(b)-(c).  However, Vaith references the standard
for negligent misrepresentation throughout his briefing.  *See* (Mem. Opp'n Mot. Dismiss
at 10 [Doc. No. 35]; Mot. Remand at 8 [Doc. No. 22].)

2. Fails to use reasonable care or competence in obtaining the information or communicating it to that person, and

3. The other person relied on the information, and

4. The other person was justified in relying on that information, and

5. The other person was financially harmed by relying on the information."

*Hardin Cty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd*, 821 N.W.2d 184, 191 (Minn. 2012) (brackets omitted).

House Chevrolet argues that Vaith fails to plead any of the specific facts needed to pass muster under Rule 9(b), pointing out that Vaith merely alleged that House Chevrolet "made partial disclosures about the safety and quality of the subject vehicle" and "fraudulently and affirmatively concealed the defective nature of the subject vehicle." (Compl. ¶¶ 62(b)-(c). Vaith provides no details regarding the content of the alleged partial disclosures or affirmative concealments, who made them, or when or how they were made. Indeed, House Chevrolet argues, it is not possible even to tell if Vaith alleges the misrepresentations were made by House Chevrolet, General Motors, or both because House Chevrolet and General Motors are lumped together under the single label of "defendants" at various points in the complaint.

Vaith contends he has specifically pled facts underlying each element of his misrepresentation claim that meet the particularity requirement, and adequately apprise House Chevrolet of the factual basis for his claims against it. As support, Vaith highlights the following portions of his complaint:

- "At the time it sold the vehicle in question, Defendant House Chevrolet was in the business of selling vehicles like the vehicle in question . . ." and

"Defendant House Chevrolet Co., is a car and truck dealer in the business of selling and leasing vehicles, including those designed and manufactured by GM, particularly including Plaintiff Chad Vaith's Chevy Silverado 1500 LTZ." (Compl. ¶¶ 10, 19, 21)

- "Defendants made partial disclosures about the safety and quality of the subject vehicle while not revealing its true defective nature" (*Id*. ¶ 62)

- "House Chevrolet Co. knew that the subject vehicle was defective in that these vehicles had an unreasonably dangerous propensity to unexpectedly cause loss of control." (*Id*. ¶ 61.)

- "House Chevrolet Co. was under a duty to disclose and warn of the defective nature of the subject vehicle . . . [but] [e]ach of the foregoing Defendants fraudulently and affirmatively concealed the defective nature of the subject vehicle." (Id. ¶ 62.)

- "Plaintiff did not have knowledge that the vehicle he purchased was equipped with an unreasonable safety defect at the time he purchased the vehicle" and Plaintiff "would not have purchased the vehicle had the existence of the unreasonable safety defect in the subject vehicle been disclosed to him." (Id. ¶ 64)

- "Defendants intentionally concealed and failed to disclose the true nature of the problems . . . and based on this false sense of safety, induced the purchase of the subject vehicle by Plaintiff." (*Id*. ¶ 65.)

- "Each of the foregoing defendants was in a superior position to know the true state of the facts about the hidden defect in the subject vehicle, and that defect was latent." (*Id*. ¶ 62.)

- "Defendants have not adequately notified past purchasers or warned future purchasers of the defect, and have not taken appropriate action to recall, buy back or retrofit their defective product." (*Id*. ¶ 66.)

- "At the time it sold the vehicle in question, Defendant House Chevrolet was in the business of selling vehicles like the vehicle in question and is responsible for the damages of the Plaintiff pursuant to principle of seller liability, as further described herein." (*Id*. ¶ 21.)

- "Plaintiff suffered severe personal injuries and damages. (*Id*. ¶ 81.)

11

The Court finds that the Complaint fails to adequately plead a claim for misrepresentation. Rule 9(b)'s particularity requirement "'demands a higher degree of notice than that required for other claims,' and 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). Here, Vaith pleads no concrete facts to support that House Chevrolet actually knew of or had reason to know of the alleged defects in Vaith's Silverado truck. Vaith points to seventeen different product recalls issued by the National Highway Traffic Safety Administration (NHTSA) that covered some 2014 model year Chevy Silverados, and generally alleges that House Chevrolet misrepresented the safety of the truck in light of one or more of the safety defects addressed by those recalls. (Compl. ¶ 16.) But Vaith's complaint alleges no facts to support that any product recalls issued before he bought his truck (and therefore knowable to House Chevrolet) actually covered his truck, and therefore no facts to support that House Chevrolet knew or should have known that they did.[3]

Further, the Complaint does not specify what actual misrepresentations were made to Vaith by House Chevrolet regarding the safety of the truck, the identity of the person at House Chevrolet who made those misrepresentations, or when or in what form the misrepresentations were supposedly made. Without more, House Chevrolet is unable to

---

[3] General Motors points out that of the seventeen NHTSA recalls Vaith cites as having been issued on 2014 Chevrolet Silverados, only three applied to Vaith's particular truck, and those three were all issued *after* Vaith's accident, roughly six months after he purchased the vehicle from House Chevrolet. (Stephani Decl., Ex. 1 [Doc. No. 31-1].) *See Block v. Toyota,* 665 F.3d 944, 946 (8th Cir. 2011), 2010 WL 5422555, at *2 ("courts may consider extrinsic facts for the limited purpose of deciding whether joinder is fraudulent").

12

understand or "respond specifically and quickly" to the allegations concerning its purported misrepresentations it is alleged to have made.

Thus, Vaith fails to show "an arguably reasonable basis for predicting that the state law might impose liability based upon the facts involved." *O'Reilly Auto.*, 874 F. Supp. 2d at 808. Just as Rule 9(b) imposes a heightened pleading standard for fraud claims, the Minnesota rules require that "all averments of fraud or mistake . . . be stated with particularity." Minn. R. Civ. P. 9.02. And, under firmly established Minnesota law, a claim for misrepresentation sounds in fraud and must be pled with particularity pursuant to Minnesota Rule 9.02. *Hardin Cty. Sav. Bank*, 821 N.W.2d at 191. In other words, the analysis in the state court would be no different than the analysis conducted in this court with respect to whether Vaith has stated a claim against House Chevrolet that is sufficiently particular to survive a motion to dismiss. Other courts addressing this issue have similarly found that dismissal for fraudulent joinder is appropriate where claims "fail to generate an actionable basis for liability because they do not meet the heightened pleading standard in Rule 9(b)." *Murphy*, 699 F.3d at 1032; *see also, Block v. Toyota Motor Corp.,* No. CIV. 10-2802 ADM/AJB, 2010 WL 5422555, at *5 (D. Minn. Dec. 23, 2010), *aff'd*, 665 F.3d 944 (8th Cir. 2011) ("under both federal and state civil procedure rules, fraud must be pled with particularity"); *Cartier v. Wells Fargo Bank, N.A.*, No. CIV. 11-2168 JRT/AJB, 2012 WL 2499455, at *6 n.16 (D. Minn. Feb. 22, 2012).

The Court's conclusion with respect to Vaith's misrepresentation claim is supported by the Eighth Circuit's decision in *Block v. Toyota,* 665 F.3d 944, 946 (8th Cir. 2011). That case, like the instant one, involved a plaintiff who suffered serious injuries in

an automobile accident and sought to recover both from the manufacturer of and dealer that sold an allegedly defective car. In particular, the plaintiff brought claims for strict products liability, negligence, and fraud against the dealership, alleging it had actual knowledge of the defects before it sold the car in question. The defendant, on the other hand, claimed the dealership had been fraudulently joined solely to defeat diversity jurisdiction. To support its contention that the dealership had actual knowledge of the defect, the plaintiff generally alleged in its complaint that the dealership "knew or should have known" of reports about an acceleration defect in the car and that the dealership was or should have been aware of three NHTSA complaints regarding unintended acceleration in the car. *Block*, 665 F.3d at 950. The Court, however, found those allegations insufficient to plausibly show that the dealership had actual knowledge of the defect because the plaintiff did not make "any specific allegations concerning how [the dealership] had knowledge regarding a defect." Further, the Court found that the plaintiff failed to show that the NHTSA complaints applied to the particular car the dealership had sold. Similarly here, Vaith has failed to plead any specific allegations that House Chevrolet knew about specific alleged defects in the Chevrolet Silverado sold to Vaith or that any of the NHTSA recalls it points to even applied to Vaith's truck. Therefore, Vaith has not offered enough to state a plausible claim for misrepresentation and the Court will recommend granting the motion to dismiss on the basis of fraudulent joinder.

14

### D.    Count VIII – Minnesota Consumer Fraud Act

For similar reasons, House Chevrolet argues that Vaith's claim in Count VIII under the Minnesota Consumer Fraud Act must also fail because the Complaint states only general allegations but fails to describe with particularity any specific acts or omissions.  In particular, House Chevrolet highlights the following allegations in the complaint:

- "Defendants named herein intended that individuals, like Plaintiff, rely on their fraudulent, false, deceptive and/or misleading statements and practices, in connection with their sale of the vehicles, vehicle components, and related services." (Compl. ¶ 72.)

- "In violation of Minn. Stat. § 325F.69, subd. 1, the Defendants deceptively refused to disclose their knowledge of the defective nature of the subject vehicle, and the associated deaths, with the intent that consumers, such as Plaintiff, would purchase, use and maintain GM vehicles, benefitting Defendants financially."  (Compl. ¶ 73.)

- "In violation of Minn. Stat. § 325F.69, subd. 1, the Defendants concealed materials facts with the intent that consumers, such as Plaintiff, rely on half-truths in connection with the sale of vehicles, vehicle components, and related services."  (Compl. ¶ 74.)

House Chevrolet points out that these statements, like the allegations made in connection with the misrepresentation claim, merely contain bald accusations without any substantiating details as to who, what, when or how the alleged fraud was carried out. Therefore, House Chevrolet argues the Court should dismiss Count VIII against it.

Minnesota's Consumer Fraud Act provides that:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Minn. Stat. § 325F.69, subd. 1.[4]  Although claims of fraud under the Minnesota

Consumer Fraud Act must be pled with particularity, "the degree of particularity required

depends on the parties' relationship and the nature of the case" with the ultimate measure

of sufficiency being whether the "claims are sufficiently detailed to allow [the defendant]

to respond to [the] allegations."  *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 945

(D. Minn. 2009).  In particular, Vaith highlights the following details in his complaint

that he asserts state a claim under the Minnesota Consumer Fraud Act with sufficient

particularity to satisfy the requirements of Rule 9(b):

- "House Chevrolet Co. knew or should have known of the numerous defects in new GM vehicles . . . because House Chevrolet was in the business of selling vehicles like the vehicle in question." (Compl. ¶¶ 21-23.)

- House Chevrolet "had knowledge of the unreasonable safety defects of the subject vehicle" but "failed to adequately disclose the nature and the extent of the danger created by the [various] vehicle defects" and "intentionally concealed . . . the true nature of the problems of the subject vehicle." (*Id*. ¶ 24, 63-64.)

- Defendants "concealed material facts with the intent that consumers, such as Plaintiff, rely on half-truths in connection with the sale of vehicles, vehicle components, and related services."  (*Id*. ¶ 74.)

- If Plaintiff had known about the "unreasonable safety defect at the time that he purchased the vehicle, [he] would not have purchased the vehicle."  (*Id*. ¶ 64.)

- "Defendants conduct . . . injured Plaintiff entitling him to damages." (*Id*. ¶¶ 75, 81.)

---

[4]  Although the Minnesota Consumer Fraud Act only contemplates equitable remedies, Minnesota's Private Attorneys General Statute authorizes Vaith to recover damages for violations of the statute.  In particular, Minn. Stat. § 8.31, subd. 3a. provides that "any person injured by a violation of [the Minnesota Consumer Fraud Act] may bring a civil action and recover damages."

Vaith concedes that he does not identify the precise employee or the exact words he or she used to sell Vaith the Chevy Silverado, but argues this is not fatal to his claim in light of the reasoning in *Kinetic v. Medtronic*, 672 F. Supp. 2d 933, 945 (D. Minn. 2009). In that case, the plaintiffs alleged that Medtronic violated the Minnesota Consumer Fraud Act when it continued to sell certain implantable cardiac defibrillators after learning of a potentially life threatening defect. Although the plaintiffs were unable to identify precisely which Medtronic employees sold the defective devices or the specific misrepresentations that were made in the course of those sales, the court concluded that in context, the allegations in the complaint were sufficiently detailed to allow the defendant to respond to the fraud claim. Vaith argues he has similarly supplied enough information for House Chevrolet to respond to the fraud allegations even though he is unable to identify which particular employee at the dealership made them and what specific misrepresentations were made to Vaith by that employee.

But *Kinetic* is distinguishable from the instant case for two reasons. First, the defendant in *Kinetic* was the manufacturer of the allegedly defective product and not an independent dealer like House Chevrolet. Thus, the court in *Kinetic* concluded that the combination of the defendant's close relationship to the allegedly defective product and the factual allegations in the pleading were sufficient to meet the particularity requirements of Rule 9(b). Second, the plaintiff in *Kinetic* specifically alleged numerous facts regarding the manufacturer's actual knowledge and concealment of a defect from its customers, giving the manufacturer a context in which to understand and respond to the claims being made. Here, House Chevrolet was in a fundamentally different position

17

with respect to the product at issue, and Vaith's complaint contains nothing that can compare with the degree of specificity described in *Kinetic,* either with respect to the alleged defects in Vaith's Chevy Silverado or House Chevrolet's knowledge thereof. Therefore, *Kinetic* provides no support for Vaith's proposition that he need not plead his fraud claim with the level of particularity normally required by Rule 9(b).

In short, as already discussed with respect to the misrepresentation claim, the Complaint does not supply a sufficient factual basis for House Chevrolet to discern from the context of the claim what the fraud was or how it was carried out. True, "[c]onsumer-protection statutes are remedial in nature and are liberally construed in favor of protecting consumers." *State by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 892 (Minn.App.1992), aff'd, 500 N.W.2d 788 (Minn.1993). But "when a party pleads a fraud claim, the circumstances constituting fraud ... shall be stated with particularity" which means that "the ultimate facts [must be] alleged." *Baker v. Best Buy Stores*, LP, 812 N.W.2d 177, 182 (Minn. Ct. App. 2012) (citing *Purdy v. Nordquist (In re Estate of Williams)*, 254 Minn. 272, 283, 95 N.W.2d 91, 100 (1959)).

For liability to be brought to bear on Home Chevrolet under the Consumer Fraud Act, Vaith must be able to describe with particularity the fraud allegedly committed. Necessary, but by no means sufficient, would be to allege specific facts demonstrating that House Chevrolet at least knew about the defects that allegedly caused Plaintiff's accident or exacerbated his injuries. Here, Vaith supplies no factual basis to conclude that House Chevrolet was aware of such defects, let alone a factual basis for Plaintiff's claim that House Chevrolet deliberately misled Vaith regarding those defects. Thus,

18

nothing in the Complaint or in the surrounding context establishes a basis on which a state court could conclude House Chevrolet is liable for fraud.

### E.    Count IX – Conspiracy

House Chevrolet argues Vaith's conspiracy claim must be dismissed, because the underlying counts on which it is premised – consumer fraud and misrepresentation – are meritless.  "[T]here is no such thing as a civil action for conspiracy." *Harding v. Ohio Cas. Ins. Co. of Hamilton, Ohio*, 230 Minn. 327, 338, 41 N.W.2d 818, 825 (1950).  "Under Minnesota law, a conspiracy is a combination of persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Bloom v. Hennepin Cty.*, 783 F. Supp. 418, 446 (D. Minn. 1992.)  Under those circumstances, a charge of conspiracy allows a plaintiff to hold multiple wrongdoers liable for a single tort when their combined efforts resulted in harm to the plaintiff.  *Bloom*, 783 F. Supp. at 446.  Here, House Chevrolet argues there is no viable conspiracy claim because there are no viable fraud or misrepresentation claims to which it can be attached.

Vaith counters that he has properly pled claims for fraud and misrepresentation and therefore has also stated a valid claim for conspiracy when he alleges that House and General Motors "have combined with one or more of each other and acted in concert with the common purpose of committing the fraud, fraudulent non-disclosure, misrepresentations, and deceptive practices as alleged above in Counts 1-8." (Compl. ¶ 77.)  But the Court has found that he has not adequately pled those underlying claims, and the whole is not made greater than the sum of the parts by attempting to import them via the conspiracy claim.  Conspiracy by itself is not a standalone cause of action.

Rather, it is a legal device to allow a plaintiff to hold multiple defendants liable for their combined conduct that together forms the basis for a cause of action.  If all that is required to avoid the pleading requirements for fraud and to get around Minn. Stat. § 441.41 is to allege that the dealer had been in a "conspiracy" with the manufacturer, the exceptions would soon swallow the rule.  Since the Court has found no viable underlying cause of action against House Chevrolet to which the conspiracy claim may apply, the Court recommends that Vaith's Count IX for conspiracy be dismissed.

## III.    Motion to Remand

Vaith moves to remand the case to state court, asserting that the Court lacks subject matter jurisdiction to hear the case because the rule of complete diversity is not satisfied given House Chevrolet's status as a non-diverse defendant in the action.  House Chevrolet asserts that remand is inappropriate, because it has been fraudulently joined to the lawsuit.  Having already determined that House Chevrolet was fraudulently joined to this action, the Court will deny the motion to remand.

Accordingly, **IT IS HEREBY RECOMMENDED** that Defendants Motion to Dismiss [Doc. No. 10] be **GRANTED** and Plaintiff's Motion to Remand [Doc. No. 22] be **DENIED**.


Dated: June 28, 2018                        s/ *Hildy Bowbeer*
                                            HILDY BOWBEER
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.